UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GLENDY YANETH ARREAGA MORALES DE PUTUL,<br><br>                  Petitioner,<br><br>   v.<br><br>LAURA HERMOSILLO, *et al.*,<br><br>                  Respondents. | CASE NO. 2:26-cv-00129-GJL<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Glendy Yaneth Arreaga Morales de Putul ("Petitioner") is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. On January 14, 2026, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody. Dkt. 1. The Petition has been fully briefed. Dkts. 1, 7, 10.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Petition and **ORDERS** Petitioner's immediate release.

**I.    BACKGROUND**

Petitioner is a native and citizen of Guatemala. Dkt. 8 at ¶ 4 (Soraghan Decl.). Petitioner entered the United States near Sasabe, Arizona, on or about September 22, 2023, after entering the United States without inspection. *Id*. Immigration officers apprehended Petitioner on the

1  same day. *Id*. The Department of Homeland Security ("DHS") served her with a Notice to

2  Appear charging her as inadmissible under 8 U.S.C. § 1182(a)(6)(a)(I). *Id*. at ¶ 5; Dkt. 9-2 at 2–

3  4, Ex. B (Lambert Decl.). DHS released Petitioner on an Order of Recognizance ("OREC") and

4  enrolled her in Alternatives to Detention ("ATD") with various supervision requirements. Dkt. 8

5  at ¶ 5; Dkt. 1-1 at 9–12, Ex. B.

6      Following her release, Petitioner relocated to Oregon with her husband and two minor

7  children and filed a timely application for asylum, withholding of removal, and Convention

8  Against Torture Protection in the Portland Immigration Court. Dkt. 1 at ¶ 28; Dkt. 1-1, Ex. C

9  (Valladares Decl.). She attended a hearing on that application in September 2025, and was

10 scheduled for another hearing in November 2026. Dkt. 1 at ¶ 28; Dkt. 1-1, Ex. F. Petitioner also

11 applied for and received an employment authorization and a Social Security number. Dkt. 1 at ¶

12 28; Dkt. 1-1, Exs. D–E.

13     As part of her enrollment in ATD, Petitioner was directed to comply with the

14 requirements of ATD's Intensive Supervision Appearance Program ("ISAP"). Dkt. 1 at ¶ 2.

15 These ATD requirements included submitting a photograph through the ISAP application

16 ("app") once a week on Thursdays upon receiving a notification to upload the photograph from

17 the app. *Id*. at ¶ 29.

18     In their Return, Respondents claim that, on six occasions, Petitioner missed these ATD

19 biometric check-ins. Dkt. 7 at 4; Dkt. 8 at ¶ 6. On each occasion, Petitioner was subsequently

20 contacted and thereafter completed a biometric check-in. Dkt. 7 at 4; Dkt. 8 at ¶ 6. In October

21 2025, Petitioner's ATD requirements were escalated to include GPS monitoring. Dkt. 7 at 4; Dkt.

22 8 at ¶ 7. On November 7, 2025, Petitioner was not at home for a scheduled home visit, which

23

24

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 2

1 Respondents claim she told ICE agents she had forgotten.[1] Dkt. 7 at 4. Thereafter, Petitioner was referred for enforcement action. Dkt. 7 at 4; Dkt. 8 at ¶ 9.

On December 19, 2025, ICE arrested Petitioner. Dkt. 7 at 4; Dkt. 8 at ¶ 10. She was transferred to NWIPC, where she is currently detained. Dkt. 7 at 4.

## II.     PROCEDURAL HISTORY

Petitioner filed the instant Petition pursuant to 28 U.S.C. § 2241 on January 14, 2026. Dkt. 1. On January 28, 2026, Respondents filed a Return arguing Petitioner's re-detention comports with due process. Dkt. 7. On February 2, 2026, Petitioner filed a Traverse. Dkt. 10.

The sole ground for habeas relief raised in the Petition is that Petitioner's re-detention without written notice and a legally sufficient pre-deprivation hearing violates her constitutional guarantees of due process under the Fifth Amendment. Dkt. 1; *see also* Dkt. 10. Respondents disagree, claiming that Petitioner's re-detention was warranted and within Respondents' statutory authority. Dkt. 7. Having reviewed the parties' arguments and the relevant legal authority, the Court agrees with Petitioner and **GRANTS** habeas relief for the following reasons.

## III.     LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person "of life, liberty, or

---

[1] The parties' accounts of Petitioner's alleged ATD violations are conflicting. *See* Dkt. 1 at ¶¶ 30–34; Dkt. 7 at 4; Dkt. 8 at ¶¶ 6–9; Dkt. 10 at 2–3; Dkt. 11-1 at ¶¶ 2–5. In response to Respondents' account of Petitioner's ATD violations, Petitioner counters with a declaration describing how, from her perspective, she did not violate the ATD program because (1) any problems with check-in requirements were caused by technical issues with the app, (2) when Petitioner was notified of a problem, she immediately remedied the issue, (3) ICE officers told her that she was in compliance, and (4) there was confusion as to whether the November 7 visit was to be a home visit or a video call. *See* Dkt. 11-1 at ¶¶ 2–5.

property, without due process of law[.]" U.S. Const. amend. V. Due process protections extend to all individuals within U.S. borders, including noncitizens, regardless of their immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Procedural due process demands meaningful notice and a genuine opportunity to be heard before the federal government infringes upon a liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Courts in the Ninth Circuit apply the *Mathews* balancing test in immigration detention cases, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the Government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

## IV.   DISCUSSION

All three *Mathews* factors weigh in favor of Petitioner: (1) she has a protected liberty interest against re-detention within NWIPC following her prior release, (2) the absence of pre-deprivation procedures created an unacceptably high risk of erroneous deprivation, and (3) the governmental interest in Petitioner's re-detention without a hearing is minimal or non-existent.[2]

---

[2] The application of the *Mathews* factors to the case at bar is consistent with a high volume of similar cases within the District. *See, e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1321–24 (W.D. Wash. 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136–37 (W.D. Wash. 2025); *Kumar v. Wamsley*, No. 2:25-cv-01772-JHC-BAT, 2025 WL 2677089, at *3–4 (W.D. Wash. Sept. 17, 2025); *Ledesma Gonzalez v. Bostock*, No. 2:25-cv-01404-JNW-GJL, 2025 WL 2841574, at *7–9 (W.D. Wash. Oct. 7, 2025); *P.T. v. Hermosillo*, No. 25-cv-2249-KKE, 2025 WL 3294988, at *2–4 (W.D. Wash. Nov. 26, 2025); *Francois v. Wamsley*, No. 25-cv-2122-RSM, 2025 WL 3496557, at *3–4 (W.D. Wash. Dec. 5, 2025); *Manuel v. Hermosillo*, No. C25-CV-2353-TL-MLP, 2025 WL 3690778, at *2 (W.D. Wash. Dec. 10, 2025), *report and recommendation adopted*, No. C25-2353-TL-MLP, 2025 WL 3697277 (W.D. Wash. Dec. 19, 2025); *A.C.J. v. Hermosillo*, No. 2:25-cv-02486-DGE, 2026 WL 73857, at *3–5 (W.D. Wash. Jan. 9, 2026); *Perez v. Hermosillo*, No. 25-cv-2542-RSM, 2026 WL 100735, at *6 (W.D. Wash. Jan. 14, 2026); *Yildirim v. Hermosillo*, No. 25-cv-2696-KKE, 2026 WL 111358, at *2–4 (W.D. Wash. Jan. 15, 2026); *G.S. v. Hermosillo*, No. 25-cv-2704-TSZ, 2026 WL 179962, at *3 (W.D. Wash. Jan. 22, 2026); *Torres v. Hermosillo*, No. 2:25-CV-02687-LK, 2026 WL 145715, at *6–8 (W.D. Wash. Jan. 20, 2026); *Shinwari v. Hermosillo*, No. 2:26-cv-00009-RAJ, 2026 WL 262605, at *3–4 (W.D. Wash. Jan. 30, 2026).

Respondents assert that they acted within their statutory authority to re-detain Petitioner without prior notice or hearing. *See* Dkt. 7. As Petitioner correctly argues, and courts in this District have made clear, Respondents' statutory authority to detain does not validate an invasion of Petitioner's liberty interest without constitutionally guaranteed process. *See* Dkt. 10 at 5; *Shinwari*, 2026 WL 262605, at *3 ("As multiple courts in this district have found in similar cases, even if a particular statute or regulation does not require a pre-arrest hearing in these specific circumstances, this does not mean such a hearing is not required by Due Process.") (citations and quotations omitted); *P.T.*, 2025 WL 3294988, at *2 ("To the extent that the Government's briefing suggests that Section 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected. In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained.").[3]

Respondents also contend their re-detention of Petitioner complied with due process because her case "qualifies as a special case due to her ATD violations." Dkt. 7 at 7. However, this argument fails for the very reason that the central issue here is *the process* by which re-detention occurred, not whether it was warranted. *Ramirez Tesara*, 800 F. Supp. 3d at 1137 ("[T]he fact that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.");

---

[3] Petitioner does not contest Respondents' statutory authority to detain under Section 1225(b) of the INA, but argues this asserted statutory authority "ignores the fact that 'the protections of due process are not exclusively based in statute' and, thus, apply even in cases where petitioners are subject to mandatory detention by statute." Dkt. 10 at 5. The Court agrees with Petitioner here and notes that such claimed authority under Section 1225(b) of the INA is dubious and entirely inconsistent with Respondents' application of this provision in the case at bar. It is undisputed that Petitioner was released on her own recognizance and living in the United States before she was re-detained at NWIPC. This casts considerable doubt on Respondents' argument that this Petitioner is currently an "applicant for admission" subject to mandatory detention under § 1225(b). Dkt. 7 at 8. *See, e.g., Herrera Gomez v. Wamsley*, No. 2:25-cv-02642-JNW, 2026 WL 279966, at *2 (W.D. Wash. Feb. 3, 2026) ("This Court has previously rejected the Government's Section 1225(b) argument and does so again here.") (citing *Ledesma Gonzalez*, 2025 WL 2841574, at *3–4).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 5

*Yildirim*, 2026 WL 111358, at *4 (noting that any factual disputes related to the justification for the petitioner's re-detention should have been resolved at a pre-deprivation hearing, not after-the-fact during habeas proceedings).

In sum, irrespective of whether re-detention was authorized or warranted, the Constitution guarantees notice and an opportunity to be heard before Petitioner can be removed from her family, home, employment, and community. Such disruptions to the life of this individual are constrained by the constitutional guarantee of providing a pre-deprivation notice and hearing required by application of the *Mathews* factors in this case. *See, e.g., P.T. v. Hermosillo*, 2025 WL 3294988, at *4 (collecting cases); *G.S.*, 2026 WL 179962, at *3 (same). Indeed, these processes serve "as a crucial bulwark against the unfettered disregard of individual liberty interests." *Id.* at *3.

Accordingly, the Court finds that, in re-detaining her without prior notice and an opportunity to be heard, Respondents violated Petitioner's procedural due process rights. Petitioner is, therefore, entitled to habeas relief for these constitutional deprivations.

## V.    REMEDY

As relief, Petitioner seeks immediate release from custody and a permanent injunction prohibiting her re-detention without first receiving written notice and an opportunity to be heard on an individualized bond determination before a neutral decisionmaker. Dkt. 1 at 12–13. Respondents contend that permanent injunctive relief is not warranted because Petitioner's request concerns speculative future detention and, therefore, is not ripe for review in this habeas matter. Dkt. 7 at 8. The Court disagrees.

Habeas corpus relief is "at its core, an equitable remedy." *Schlup v. Delo*, 513 U.S. 298, 319 (1995). The equitable roots of habeas corpus are embodied by "the statutory command that

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 6

the judge, after granting the writ and holding a hearing of appropriate scope, [shall] 'dispose of the matter as law and justice require.'" *Fay v. Noia*, 372 U.S. 391, 438 (1963) (quoting 28 U.S.C. § 2243). A habeas court is thus authorized to "fashion appropriate relief other than immediate release," *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973), in order to ensure an effective remedy for unlawful detention. *Cf. Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) ("Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.").

These equitable principles authorize courts not only to remedy unlawful detention through release, but also to craft forward-looking relief necessary to prevent recurrence of the constitutional violation. Where a petitioner demonstrates a cognizable danger of repeated unlawful detention, permanent injunctive relief falls within the breadth and flexibility inherent in habeas equitable powers. *See Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) ("The necessary determination [for granting a permanent injunction] is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.") (quotations omitted).

In this case, the Petition clearly alleges re-detention without sufficient process by Respondents, demonstrating that Petitioner faces a continuing threat of constitutional harm throughout her removal proceedings. *See* Dkt. 1. Moreover, Respondents' own representations in this litigation lend additional proof of the ongoing threat faced by Petitioner. Dkt. 7 at 7 ("[A] pre-deprivation hearing would be futile as [Petitioner's] detention is based on her mandatory detention. An analysis of Petitioner's dangerousness or flight risk should not be relevant."). Respondents make clear that their current practices for re-detention contravene, and will

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 7

continue to contravene, the constitutional principles espoused in this Order and in other court orders issued in this District. *See id.* at 5 n.2; 8.

Where, as here, Petitioner is detained pursuant to constitutionally deficient process and faces a threat of future injury without the grant of injunctive relief, the Court finds an order of immediate release and a permanent injunction appropriate.[4] Accordingly, the Court **GRANTS** habeas relief as set forth in the conclusion below.

//

//

//

---

[4] This relief is consistent with relief fashioned by other courts in this District. *See, e.g.*, *Shinwari*, 2026 WL 262605, at *4 (ordering petitioners shall not be re-detained "unless and until" they are provided "with 10 days' written notice and a meaningful opportunity to be heard before an immigration judge to determine whether detention is appropriate."); *E.A. T.-B.*, 795 F. Supp. 3d at 1324 (ordering that petitioner "may not be re-detained until after an immigration court hearing is held (with adequate notice) to determine whether detention is appropriate"); *Francois*, 2025 WL 3063251 at *4 (ordering that petitioners "may not be re-detained until an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate."); *but see Torres*, 2026 WL 145715, at *8 (denying permanent injunction where petitioner failed to allege facts demonstrating threat of future harm).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 8

## VI. CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

(1) Petitioner's habeas Petition (Dkt. 1) is **GRANTED**;

(2) Respondents **SHALL release** Petitioner from custody immediately under the conditions of her prior release;

(3) Respondents **SHALL NOT re-detain** Petitioner without advance written notice and a pre-detention hearing before a neutral decisionmaker; and

(4) Respondents **SHALL** file a declaration within **24 HOURS** of the issuance of this Order, confirming that the Petitioner has been released from custody and providing the date and time of her release.

Finally, the Court will entertain any post-judgment motion for attorney's fees, as requested in the Petition.

Dated this 19th day of February, 2026.

Grady J. Leupold
United States Magistrate Judge