UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GLENDY YANETH ARREAGA MORALES DE PUTUL,<br>Petitioner,<br>v.<br>LAURA HERMOSILLO, *et al.*,<br>Respondents. | CASE NO. 2:26-cv-00129-GJL<br><br>ORDER ON MOTION FOR EQUAL ACCESS TO JUSTICE ACT FEES |

The Court previously granted Petitioner's Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See* Dkt. 13. Petitioner now seeks an award of attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d) (the "Motion"). Dkt. 16. Petitioner also seeks an enhanced rate above the EAJA's maximum statutory rate for two of the attorneys who worked on her case. *See id*. Respondents agree Petitioner is the prevailing party, but argue fees should be denied because their legal position was substantially justified, and alternatively if fees are awarded, they should be limited to the statutory rates. Dkt. 18.

//

//

Upon review of the Motion, materials filed in support of and in opposition to the Motion, pertinent portions of the record, and the applicable law, for the reasons set forth below, the Court **GRANTS** the Motion. Dkt. 16.

## I. BACKGROUND

On January 14, 2026, Petitioner Glendy Yaneth Arreaga Morales de Putul filed a habeas Petition challenging her re-detention by United States Immigration and Customs Enforcement ("ICE"). Dkt. 1. On February 19, 2026, the Court granted the Petition, finding Petitioner's re-detention without prior notice and an opportunity to be heard violated Petitioner's procedural due process rights. Dkt. 13. The Court ordered Respondents to immediately release Petitioner and established permanent injunctive relief regarding any future re-detention. *Id*. at 9.

On May 20, 2026, Petitioner's counsel filed this Motion for attorney's fees under the EAJA. Dkt. 16. Counsel requests $500 per hour for 31.85 hours worked by lead counsel, Ms. Julia Braker; $550 per hour for 3.25 hours worked by a second counsel, Mr. Michael Purcell; $258.46 per hour for 15.68 hours worked by four other counsel, and $258.46 per hour for 8.74 hours of paralegal work. *Id*.; Dkt. 16-2, Ex. B. In the Reply in support of this Motion, lead counsel requests an additional 2.2 hours for the time preparing the Reply at a rate of $500. Dkt. 19 at 6; Dkt. 19-2, Ex. N (showing a new total hours for lead counsel at 34.05).

Under the EAJA, the statutory rate for attorney's fees, adjusted for inflation for work performed in 2025, is $258.46 per hour. Dkt. 18 at 4 (citing the Ninth Circuit's most recent setting of the EAJA hourly rate). Utilizing this adjusted statutory rate, with the exception of enhanced fees for two attorneys, Petitioner's counsel now seeks $25,129 in attorney's fees, which includes their briefing on this Motion. Dkt. 19 at 6.

//

## II. LEGAL STANDARD

"The EAJA provides . . . that in an action brought by or against the United States, a court must award fees and expenses to a prevailing non-government party 'unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.'" *Medina Tovar v. Zuchowski*, 41 F.4th 1085, 1089 (9th Cir. 2022) (quoting 28 U.S.C. § 2412(d)(1)(A)). "For the court to award attorney's fees and costs pursuant to the EAJA, it must be shown that (1) the plaintiff is the prevailing party; (2) the government has not met its burden of showing that its positions were substantially justified or that special circumstances make an award unjust; and (3) the requested attorney's fees and costs are reasonable." *Perez-Arellano v. Smith*, 279 F.3d 791, 793 (9th Cir. 2002).

"It is the government's burden to show that its position was substantially justified." *Medina Tovar*, 41 F.4th at 1089. Substantially justified means "justified to a degree that could satisfy a reasonable person." *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). "Put differently, the government's position must have a 'reasonable basis both in law and fact.'" *Id*. (quoting Pierce, 487 U.S. at 565). The Court examines "both the government's litigation position and the underlying agency action giving rise to the civil action." *Id*. Whether the government's position was substantially justified is a matter of discretion for the district court. *Id*. at 869.

Here, there is no dispute that Petitioner is the prevailing party. *See* Dkt. 16 at 3; Dkt. 18 at 1. The Court therefore turns to consider whether Respondents' position was substantially justified.

//

//

## III. DISCUSSION

### A. Respondents' Position Was Not Substantially Justified

Respondents argue that their litigation position was substantially justified because they weighed the Government's interest in Petitioner's detention against her private interest in not being detained, as required by the *Mathews* balancing test, and this Court simply disagreed with their position. Dkt. 18 at 3. That disagreement, Respondents argue, does not render their position unjustified. *See id*. (citing *Edwards v. McMahon*, 834 F.2d 796, 802 (9th Cir. 1987)). They support this conclusion by emphasizing there is no categorical requirement for pre-deprivation hearings. Dkt. 18 at 3–4 (citing *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321–24 (W.D. Wash. 2025); *Calderon v. Noem*, No. 2:25-cv-02136, 2025 WL 3754042, at *8 (W.D. Wash. Dec. 29, 2025)). On this basis, Respondents maintain that the outcome of this litigation was not a foregone conclusion. Dkt. 18 at 3–4. The Court disagrees.

The overwhelming weight of authority in this District holds that noncitizens who have been released from detention and are living in the community may not be re-detained without due process. *See, e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1203–04 (W.D. Wash. 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136–38 (W.D. Wash. 2025); *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1336 (W.D. Wash. 2025); *Kumar v. Wamsley*, No. 2:25-cv-01772-JHC-BAT, 2025 WL 2677089, at *2–4 (W.D. Wash. Sept. 17, 2025). Neither this case nor *E.A. T.-B.* purported to announce a new rule; instead, both applied longstanding due process principles to a change in agency interpretation and practice that federal courts have overwhelmingly rejected, both before and after this case was resolved. *See Ramirez Tesara v. Hernandez*, No. 2:25-cv-1723-KKE, 2026 WL 1506097, at *2 (W.D. Wash. May 29, 2026). Accordingly, even if Respondents' litigation position could be

viewed as substantially justified in light of unsettled appellate authority, their underlying agency action was not. *Id*.

Respondents have failed to persuade the Court that their position was substantially justified. Thus, the Court will now consider whether the fees requested by Petitioner, including enhanced fees, are reasonable.

**B. Enhanced Fees**

EAJA caps attorney's fees at $125 per hour, adjusted for inflation "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Here, Petitioner seeks an enhanced fee award at market rates for two attorneys involved the case because "she would not have prevailed in this action absent counsel without 'distinctive knowledge or specialized skill needful for the litigation in question.'" Dkt. 16 at 6 (quoting *Pierce v. Underwood*, 487 U.S. 552, 572 (1988)).

Three elements must be met to satisfy 28 U.S.C. § 2412(d)(2)(A). Specifically, a court may award market rates based on the limited availability of qualified attorneys when the attorneys possess (1) "distinctive knowledge and specialized skill" that was (2) "needful to the litigation in question" and (3) "not available elsewhere at the statutory rate." *Nadarajah v. Holder*, 569 F.3d 906, 912–15 (9th Cir. 2009).

Respondents do not dispute Petitioner's argument in support of the first two elements, namely that Ms. Braker and Mr. Purcell have "distinctive knowledge and specialized skill" needed for this litigation. *See* Dkt. 18 at 5. Rather, Respondents contend Petitioner's counsel has not demonstrated that qualified counsel was not available at lower rates than those Ms. Braker and Mr. Purcell seek to recover for this case. *Id*. at 5–6.

To make that showing for the third element, Petitioner must show "that qualified counsel was not available for this litigation at the statutory maximum hourly rate." *Nadarajah*, 569 F.3d at 915. To do so, "'[n]o one expects the plaintiffs to conduct statistical surveys.'" *Id.* (quoting *Atl. Fish Spotters Ass'n v. Daley*, 205 F.3d 488, 493 (1st Cir. 2000)). Rather, a petitioner can, for example, submit a declaration "'say[ing], with at least modest support . . . that as a practical matter the plaintiffs would be unable to find a[n] . . . expert for $125.'" *Id.* (quoting *Atl. Fish Spotters Ass'n*, 205 F.3d at 493).

Here, in support of this third element, Petitioner's counsel contends there were "no attorneys available with the specialized knowledge required for this litigation who would handle this case at the EAJA rates of approximately $250 per hour." Dkt. 16 at 9. Petitioner also provides declarations of Mr. Purcell and Brent Renison, both Oregon attorneys practicing immigration law since the mid-1990s, and each stating that they would not have accepted this immigration case at the EAJA statutory rate. Dkt. 16-6 ¶ 19; Dkt. 16-7 ¶ 30.

Mr. Purcell adds the following with respect to the lack of available lawyers to perform immigration work:

> The lack of available lawyers is closely related to the problems of specialized knowledge and special training. All the immigration lawyers I know are overworked, and a number have stopped accepting new clients.
>
> This case was filed on January 14, 2026, and concluded on February 19, 2026. To test how many immigration lawyers were available for habeas cases in this time, I queried CM/ECF to return all active or inactive case numbers filed in WDWA between January 1 and February 28, 2026, for case type code 463 (alien detainee).
>
> There were approximately 286 cases. I created a table (attached) showing case numbers, dates filed, and the attorney or firm name, if any. Because Northwest Immigration Rights Project ("NWIRP") often joined multiple clients into a single case, there were actually a total of about 362 habeas petitioners.
>
> Of these 362 petitioners, fifty-two (52) were *pro se*. The remaining 310 were represented by a total of fifty-three (53) providers, of whom about twenty-two (22)

> were in the private bar. This should be measured against the approximately 600 lawyers who as of May 2026 are members of the Washington chapter of the American Immigration Lawyers Association.

Dkt. 16-7 ¶¶ 14–17. Mr. Purcell also provides that the shortage of immigration attorneys in the Western District of Washington is also attributable to the increase in the number of non-citizen habeas corpus cases originating from the ICE detention facility in Tacoma, Washington, due to the present administration's policies on immigration enforcement starting around October 2025. *Id*. ¶¶ 18–20.

Mr. Renison further asserts:

> The statutory rate . . . would have been woefully inadequate for Petitioner to have retained counsel with reasonably comparable skills, experience and reputation and who had the necessary distinctive knowledge and specialized skill in this case.
>
> * * *
>
> I was and still am at full capacity in my practice and not taking new cases, particularly those requiring me to drop everything. There are so few immigration attorneys who have the necessary knowledge to pursue a case like this in federal court at all and not to mention successfully. Petitioner could not have retained counsel with the necessary skills at the statutory rate, given the lack of available and qualified lawyers in our community.

Dkt. 16-6 ¶ 19.

Respondents counter with several points that are unpersuasive. First, Respondents argue that despite the Declarants above stating that they themselves would not have accepted this case at the statutory rate, Petitioner has not demonstrated that "distinctive skills" were unavailable from any other attorney at that rate. Dkt. 18 at 5. The Court disagrees.

Under the authorities cited above, Petitioner's provided declarations are sufficient. In particular, Mr. Purcell's declaration contains a statistical analysis of the availability of immigration lawyers in this District that goes beyond that which is required to make a showing of the third element here. *See* Dkt. 16-7 ¶¶ 15–18. Respondents have not meaningfully responded to such evidence.

Respondents also argue that Petitioner's declaration in support of the Motion does not allege that she was unable to locate counsel at the statutory rate. *See* Dkt. 16-4, Ex. D. However, in light of the declarations provided by Mr. Purcell and Mr. Renison in support of the Motion, the Court finds that further evidence from Petitioner herself as to the unavailability of qualified counsel is not necessary in this case.

Further, Respondents cite immigration habeas cases in this District that several private attorneys successfully litigated who also possess the needed skills similar to those described by Mr. Purcell and Mr. Renison. *See* Dkt. 18 at 5 (citing cases). However, of the nine cases cited by Respondents, only one case has made a determination of attorney's fees based on the EAJA statutory rates, and that court was not asked to consider enhanced fees. *See G.S. 2 v. Hermosillo*, No. 2:25-cv-02705-MLP, Dkt. 21 (W.D. Wash. Jun. 12, 2026). Without those determinations, the Court finds Respondents' argument falls short.

Finally, Respondents cite three cases in which private immigration attorneys accepted the EAJA's statutory rate. *See* Dkt. 18 at 5–6 (citing *M.M. v. Hermosillo*, No. 2:25-cv-2074-TMC, 2026 WL 252076 (W.D. Wash. Jan. 30, 2026); *Zavorin v. Wamsley*, No. 2:26-cv-0173-DGE, 2026 WL 879246, at *2 (W.D. Wash. Mar. 31, 2026; *Orozco Valle v. Scott*, No. 2:25-cv-02429-JNW-TLF, Dkt. 18 (W.D. Wash.)[1]). While it may be true that the attorneys in those cases accepted the statutory rate, the Court makes its determination here based on the evidence presented in this case. The Court finds Petitioner has made a showing that an award of enhanced fees is justified for Attorneys Braker and Purcell due to the limited availability of qualified attorneys for this proceeding. *See* 28 U.S.C. § 2412(d)(2)(A).

[1] Petitioner's counsel subsequently filed a notice to withdraw the motion for attorney fees in this case. *See Orozco*, 2:25-2429-JNW-TLF, Dkt. 19 (W.D. Wash. Mar. 20, 2026).

In sum, the Court finds Petitioner has made a showing sufficient to satisfy 28 U.S.C. § 2412(d)(2)(A)'s prerequisite that competent counsel was "not available for this litigation at the statutory maximum hourly rate." *Nadarajah*, 569 F.3d at 915.

**C. Amount and Reasonableness of Fees**

Hourly rates are reasonable when the "requested enhanced rates are 'in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Nadarajah*, 569 F.3d at 916 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 & n.11 (1984)). Because courts in the Ninth Circuit and this District have historically been skeptical of fee matrices, this Court will instead look to attorney affidavits and rate determinations in other cases to determine the prevailing community rates. *See Koonwaiyou v. Blinken*, 724 F. Supp. 3d 1222, 1235 (W.D. Wash. 2024) (citing *United Steelworkers of Am. V. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)); *see also Rahman v. Bondi*, No. 2:24-cv-02132-JHC-TLF, 2026 WL 323046, at *5–6 (W.D. Wash. Feb. 6, 2026).

Based on the declarations submitted by Petitioner, and the rates recently awarded in *Koonwaiyou* and *Rahman*, the Court finds the following hourly rates to be reasonable: $550 per hour for Michael Purcell, and $500 per hour for Julia Braker. Further, Respondents have not challenged the number of hours expended by the six attorneys and one paralegal in the case. *See* Dkt. 18. The Court therefore awards Petitioner $25,129.00 in attorney's fees.

//

//

//

## IV. CONCLUSION

Because Respondents' position was not substantially justified and Petitioner is entitled to fees at market rates for two attorneys in the case, the Motion for attorney's fees (Dkt. 16) is **GRANTED** as set forth above. Petitioner is **AWARDED** fees under the EAJA in the amount of **$25,129.00**. The judgment shall be **AMENDED** to include this award in favor of Petitioner.

Dated this 13th day of August, 2026.

Grady J. Leupold
United States Magistrate Judge